UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:

STERLING CONSULTING CORPORATION,                    Case No.: 23-20196-MAM
                                                    Chapter 11
                                                    Subchapter V

                     Debtor.

_____/

**CREDITOR KELSY YATES' MOTION FOR STAY RELIEF TO
CONTINUE COLORADO ACTION AND OPPOSITION TO DEBTOR'S
MOTION TO REJECT EXECUTORY CONTRACT (ECF 31)**

**KELSY YATES,** a creditor in her individual capacity and as assignee of Gary M. Schwartz in his capacity as receiver, by and through undersigned counsel, hereby: (1) opposes *Debtor's Motion to Reject Executory Contract* (ECF No. 31) ("Rejection Motion"), which seeks to reject a non-executory Settlement Agreement already approved by the Colorado District Court by two separate Orders in the Colorado Receivership Action (as defined below), and (2) requests an order lifting the automatic stay to allow Movant to continue prosecuting the Colorado Receivership Action so she may liquidate her remaining claims against the Debtor, pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-1.

**Preliminary Statement**

1.      Debtor's arguments in the Rejection Motion are a familiar refrain, as they are the same arguments that Debtor already raised to the Colorado District Court in connection with Debtor's attempt to thwart approval of the Settlement Agreement, and shirk its obligations thereunder.

2.      Specifically, last fall, Debtor argued to the Colorado District Court (as it does here) that the counterparty to the Settlement Agreement had breached the agreement which either excused Debtor's performance, or provided grounds for Debtor to terminate the agreement.

3.      The Colorado District Court rejected Debtor's arguments and entered an order approving the Settlement Agreement.   Subsequently, when Debtor failed to pay the $100,000 it owed under the Settlement Agreement, the Colorado District Court entered an order enforcing the Settlement Agreement and ordered Debtor to make payment no later than December 11, 2023.

4.      On December 11, 2023, the date payment was due, Debtor filed this Chapter 11 bankruptcy.

5.      Debtor has virtually no liquid assets, has filed no monthly operating reports and is effectively a liquidating company attempting a final delay tactic to avoid making the settlement payment, and to attempt to re-litigate all of the hard fought battles last year relating to enforcement of the Settlement Agreement, which legal battles cost the receivership estate over $20,000 in attorneys' fees and costs.

6.      The Court should reject Debtor's attempt at blatant forum shopping, deny Debtor's motion to reject the non-executory Settlement Agreement, where the only remaining obligation is the payment due from Debtor, and grant Movant stay relief to liquidate her remaining claims against Debtor in the forum that has already obtained jurisdiction and has institutional knowledge of the parties, facts, and issues: the Colorado District Court.

### **Factual Background**

7.      The Settlement Agreement was a culmination of a nearly 8-year long saga of a heavily litigated receivership matter in the Colorado District Court under Case No. 17CV3127 ("Colorado Receivership Action").  The receivership matter involved various businesses that were

part of the marital estate of Movant and her ex-husband.

8.      On September 19, 2016, the Colorado District Court initially appointed Debtor as receiver.

9.      On November 1, 2021, the Colorado District Court appointed a co-receiver, Gary M. Schwartz ("Co-Receiver Schwartz"), who undertook investigations and made reports to the Colorado District Court concerning Debtor's performance as receiver.

10.     The proceedings involved a steady stream of filings by Debtor opposing Co-Receiver Schwartz's actions, and the Colorado District Court's orders, including three separate appeals by Debtor to the Colorado Supreme Court.

11.     On July 6, 2023, Debtor and Co-Receiver Schwartz reached a Settlement Agreement.  The terms of the Settlement Agreement required Debtor to make a payment of $100,000 to the receivership estate, and dismiss the last pending appeal.  Upon timely payment of the settlement amount, the parties' mutual releases would be effective.  The Settlement Agreement also required the parties to ask the Colorado District Court to suppress certain reports and pleadings.[1]

12.     On October 27, 2023, the Colorado District Court approved the Settlement Agreement, over the many objections of Debtor.  Despite signing the Settlement Agreement, Debtor contested that the Settlement Agreement was a binding contract, accused Co-Receiver Schwartz of breaching the contract, and claimed that Debtor had terminated the Settlement Agreement for cause due to Co-Receiver Schwartz's alleged breaches.  The Colorado District Court rejected all of these arguments, and approved the Settlement Agreement.

13.     The Settlement Agreement also contained a provision concerning suppression of

---

[1] The Settlement Agreement is not attached hereto for reasons of confidentiality, and because the Debtor has already accused the Co-Receiver Schwartz of not suppressing certain documents.

75154421;1

pleadings.  The provision states that "[a]s part of the court approval process, all parties shall jointly request that" certain reports of Co-Receiver Schwartz and all subsequent pleadings that incorporate them be suppressed and that "[i]f the Court does not agree to this, then this Agreement shall be null and void."  In the Order approving the Settlement Agreement, the Colorado District Court approved this provision, and ordered the suppression of a 14 enumerated documents comprising the reports and pleadings incorporating the reports.

14.    The Settlement Agreement also contained a provision providing that the parties would request that the Debtor be discharged as a receiver.  In the Order approving the Settlement Agreement, the Colorado District Court ordered that "[u]on timely completion by all parties of their obligations under the Settlement Agreement, all shall request Receiver Sterling to be discharged forthwith."

15.    Although Debtor was required to pay $100,000 no later than 7 days from the Court order approving the Settlement Agreement, it failed to do so.  Debtor also failed to dismiss the last pending appeal, as required by the Settlement Agreement.

16.    On November 15, 2023, Co-Receiver Schwartz filed a motion to enforce the Settlement Agreement, requesting that the Colorado District Court order Debtor to pay the amount due under the Settlement Agreement.[2]

17.    On December 3, 2023, the Colorado District Court ordered Debtor to comply with all terms and conditions of the parties' Settlement Agreement, including payment of the $100,000 to the receivership estate.  Debtor was ordered to pay no later than December 11, 2023.  Co-Receiver Schwartz was awarded his attorneys' fees and costs for the motion.

18.    On December 11, 2023, Debtor filed its petition for bankruptcy.  Despite having no

---

[2] At that point, the pending appeal that Debtor failed to dismiss had already been dismissed by the Colorado Supreme Court.

75154421;1

operations, almost no assets, and no real reason to re-organize, Debtor filed under Chapter 11. The Chapter 11 Case Management Summary evidences that Debtor has no current or future planned operations, no insurance, no employees, and basically no creditors other than Movant, and that its exclusive reason for filing was the receivership litigation. In sum, the bankruptcy filing was a total bad faith litigation tactic.

19.    Movant was the largest, and last remaining, creditor of the receivership estate. Due to the Debtor's failure to make payment under the Settlement Agreement, the condition did not occur for the mutual release. Co-Receiver Schwartz assigned Movant all rights, title, and interest in any claim of the receivership estate against Debtor, its principal, Richard Block, and any director, officer, or owner of Debtor, including claims arising from the breach of the Settlement Agreement. On February 20, 2024, Movant filed a proof of claim for $955,910.15. (Proof of Claim #2-1.)

20.    On January 22, 2024, Debtor filed the Rejection Motion (ECF No. 31), seeking to reject the very same Settlement Agreement that was the subject of two separate Orders of the Colorado District Court. In the Rejection Motion, Debtor repeats the same arguments already rejected by the Colorado District Court concerning alleged breaches by the Co-Receiver Schwartz.

### Opposition to Motion to Reject Executory Contract

21.    The Rejection Motion should be denied because: (1) it fails to attach the relevant contract, (2) the Settlement Agreement is not executory, (3) the arguments therein have already been argued to, and rejected by the Colorado Probate Court, and (4) the Colorado Probate Court has jurisdiction over the enforcement and interpretation of the Settlement Agreement.

22.    Procedurally, the Rejection Motion fails to attach the subject Settlement Agreement that it is seeking to reject, or the relevant Orders of the Colorado District Court. That alone should

75154421;1

result in denial of the Rejection Motion.

23.    The Rejection Motion should also be denied because the Settlement Agreement is not executory.  The question of whether a contract is executory under 11 U.S.C. § 365 is often examined under either the Countryman test or the functional analysis test.  *See In re Mamedes*, No. 19-10957-BKC-MAM, 2020 WL 4289764, at *3 (Bankr. S.D. Fla. July 27, 2020).

24.    Under the Countryman approach, an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Professor Vern Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973).

25.    Under the functional approach, even if one side or the other has fully performed, the Eleventh Circuit's "amenable" stance on these matters favors "executoriness" if such a classification benefits the bankruptcy estate.  *Thompkins v. Lil' Joe Records, Inc.,* 476 F.2d 1294, 1306 n. 13 (11th Cir. 2007).  If no benefit can be derived for the bankruptcy estate by assuming or rejecting the agreement, then the agreement is not executory.

26.    Courts applying one or both tests have concluded that settlement agreements are not executory where there is only remaining an obligation to pay.  In *In re Peralta Food Corp*., Case No. 07-16508-BKC-AJC, 2008 WL 190503 (Bankr. S.D. Fla. Jan. 18, 2008), the bankruptcy court considered both the Countryman test and the functional analysis test to conclude that a settlement agreement providing for the plaintiff to stay execution on a final judgment in exchange for a stream of payments was not an executory contract. *Id*. at *3-7; *see also Gencor Indus., Inc. v. CMI Terex Corp. (In re Gencor Ind., Inc.),* 298 B.R. 902, 913 (Bankr. M.D. Fla. 2003) (mere right to payment, alone, is not enough to make a settlement agreement an executory contract).

27.    Here, the only remaining obligation is for Debtor to pay.  Debtor's protestations to the contrary have already been addressed and rejected by the Colorado District Court.  Debtor's claims that Co-Receiver Schwartz failed to suppress certain documents is a red herring: Co-Receiver Schwartz was never under a unilateral obligation to take action to suppress any and all documents in existence that reference the offending reports.  Instead, the Settlement Agreement provided that <u>both parties</u> were to request that the Court suppress certain reports, and pleadings, and that the Settlement Agreement would be null and void if the Court refused to so approve.  Co-Receiver Schwartz duly made the request, which the Colorado District Court approved and then directed the Clerk of Court to suppress a enumerated list of 14 pleadings.  No further actions concerning suppression are necessary or required—all requisite acts were done. To the extent that Debtor desires specific additional documents in the public records suppressed, it can and should address that request to the Court most equipped to deal with it: the Colorado District Court.[3]

28.    The Rejection Motion also claims that Debtor has not been discharged, but this is Debtor's fault only.  The Colorado District Court required all obligations under the Settlement Agreement be met before <u>both parties</u> were to seek a discharge of Debtor—presumably to retain appropriate jurisdiction to enforce the Settlement Agreement.  However, such an obligation contingent on payment is not a basis to find that the contract is executory.  *Cf. Enter. Energy Corp. v. United States (In re Columbia Gas System Inc.)*, 50 F.3d 233, 242 (3rd Cir. 1995) (determining releases in settlement agreement which had to be signed for parties to receive payment constituted condition precedent rather than a continuing duty).

---

[3] In an showing of good faith, the undersigned counsel requested a specific list of documents that the Debtor claimed had not been suppressed. However, the Debtor's counsel responded with a list of *non-public* documents that the Debtor wanted produced for purported redaction.  The requests were, in reality, a thinly veiled discovery request to probe into any and all claims that Debtor might have against Co-Receiver Schwartz.  Again, the most appropriate forum to address such requests is the Colorado District Court.

7

29.     Even under the functional analysis, the Settlement Agreement yields no discernible benefit to the estate. The bankruptcy case is effectively no asset case and appears to be administratively insolvent, with little to no distribution expected to unsecured creditors. The impact of Movant's claim being in a lesser amount, due to the operative terms (and Debtor's potential reaffirmation and payment) of the settlement amount, neither benefits nor burdens the estate. And, Debtor's failure to pay timely invalidated the mutual releases and could not be cured even if Debtor were to assume (which it has already forecasted, by the Rejection Motion, it will not do). As a result, the Settlement Agreement is non-executory under the functional analysis test.

30.     As an additional reason to deny the Rejection Motion, the arguments made by the Debtor herein have already been made to the Colorado District Court, which has continuing jurisdiction to interpret and enforce the Settlement Agreement, which involves an asset of the receivership estate. Under the doctrine of prior exclusive jurisdiction, this Court should abstain and defer from deciding an issue that will affect the administration of assets of a receivership estate. *See e.g., Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1377 (11th Cir. 2023) ("once one court has properly asserted *in rem* jurisdiction over a *res*, other courts are 'precluded from exercising [their] jurisdiction over the same res to defeat or impair the [first] court's jurisdiction.'") Although a liability in this court, the Debtor's obligation under the Settlement Agreement is an asset of the receivership estate. The Court should defer to the Colorado District Court in interpretation and enforcement of the Settlement Agreement. *See Noble Prestige Ltd.*, 83 F.4th at 1377 (reversing order that interfered with administration of Colorado conservatorship estate).

31.     Instead of another ill-fated appeal in the Colorado District Court, the Debtor now tries to forum shop to get a second bite at the apple. The Court should reject these blatant forum-shopping attempts and deny the Rejection Motion.

75154421;1

32.     For the foregoing reasons, the Court should deny the Rejection Motion (ECF No. 31), and find that the Settlement Agreement is not an executory contract that can be rejected.

## **Motion for Relief from Stay**

**A.      Relief Requested**

33.     By this Motion, Movant seeks entry of an Order from this Court lifting the automatic stay as to Movant to allow her to proceed with prosecuting the Colorado Receivership Action against the Debtor, including, but not limited to, obtaining a judgment against Debtor and any other affiliates of Debtor (including Richard Block) who were not released due to the non-payment under the Settlement Agreement, liquidating Movant's claim against the Debtor and its affiliates, and granting such further and other relief as this Court deems just and equitable.

34.     Movant is not seeking relief from the stay to levy upon any assets of the Debtor's bankruptcy estate to the extent that Movant obtains a judgment against the Debtor on her other as-yet-unliquidated claims, or take other collection remedies.

**B.      Basis for Relief Requested**

35.     Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay  - (1) for cause . . ."  11 U.S.C. § 362(d)(1).  "Cause" is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.  *See e.g., In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2006).

36.     The decision whether to grant relief from the automatic stay to allow litigation to continue in another forum is within the sound discretion of the bankruptcy court.  *See In re Dixie*

*Broad., Inc.,* 871 F.2d 1023, 1026 (11th Cir. 1989); *In re Murray Indus., Inc.*, 121 B.R. 635, 636

(Bankr. M.D. Fla. 1990) (citing *In re Castle Rock Props.*, 78 F.2d 159 (9th Cir. 1986)). "In

determining whether to lift the automatic stay, the courts have generally considered the prejudice

to the debtor's reorganization efforts, conservation of judicial resources, and prejudice to the

movant." *Murray Indus.*, 121 B.R. at 636-37 (citations omitted).

37.     Furthermore, the legislative history to section 362(d) provides:

> [I]t will often be more appropriate to permit proceedings to continue in their place
> of origin when no great prejudice to the bankruptcy estate would result in order to
> lead the parties to their chosen forum and to relieve the bankruptcy court from any
> duties that may be handled elsewhere.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 50

(1978), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5836, 6297; *In re Humphrey's Pest*

*Control Co., Inc.*, 35 B.R. 712, 714 (E.D. Pa. 1984); *see also In re Santa Clara County Fair Assoc.,*

*Inc.*, 180 B.R. 564, 566 (9th Cir. 1995).

38.     The bankruptcy courts in the Eleventh Circuit have held that they have discretion

to lift the automatic stay for "cause" to allow a pending action to continue against the debtor where

the balancing of the equities, involving (a) prejudice to the debtor's reorganization efforts, (b)

conservation of judicial resources and (c) prejudice to the movant, tilt toward such a result. *See In*

*re Murray Indus.*, 121 B.R. at 637.

39.     Here, the Debtor does not need to avail itself of the benefits provided by the

automatic stay and would suffer no great prejudice if the stay were lifted to allow the Colorado

Receivership Action to move forward.  The primary reason for the Debtor's bankruptcy appears

to be the debt owed to Co-Receiver Schwartz and Movant.  Only five claims were scheduled, of

which Movant's claims were two. Therefore, efficient resolution and liquidation of the Movant's

claims against Debtor in the Colorado Receivership Action, which will determine whether the

Debtor is liable for other claims relating to the receivership estate, and would liquidate the amount of the claim, will assist resolution of the bankruptcy action. *See In re Mildred Deli Grocery, Inc.*, 2018 WL 1136017, at *4 (S.D.N.Y. Bankr. Feb. 28, 2018) (finding the debtor had not established sufficient harm to prevent the lifting of the automatic stay for cause where the movant sought to proceed in pending litigation to liquidate a claim upon which the debtor would be jointly and severally liable with other non-debtor co-defendants).

40.     Furthermore, lifting the automatic stay actually should reduce the burden on the Debtor because it could otherwise be subject to duplicative motions, document requests and resolution of disputed questions of fact and law in two or even three proceedings. *See America Online, Inc. v. CN Prods.*, 272 B.R. 879, 882 n.6 (E.D. Va. 2002) ("[The automatic stay … would not operate to preclude [litigants] from obtaining information from [the debtor] pursuant to the rules pertaining to discovery against non-parties."). If the automatic stay is not lifted, the same facts and issues could effectively be litigated at least three times: in the suit against the Debtor's affiliates, in this bankruptcy case, and in any future suit against the Debtor if it should fail to confirm or complete its Chapter 11 plan. If the Debtor appeals (as it has a demonstrated penchant for doing), litigation could be multiplied six-fold. Additionally, if the claims were not liquidated in a joint and several judgment against both Debtor and its affiliates, Debtor later risks a judgment being entered against it separately, which could result in confusion as to later satisfaction of that judgment if the Debtor's affiliates satisfy the obligation.

41.     Lifting the stay will also conserve judicial resources by allowing the Colorado District Court to adjudicate the parties' claims expeditiously. The Colorado District Court has institutional knowledge of the parties, facts, and issues, and is best-suited to continue to adjudicate this long-running receivership estate dispute. *See In re Mildred Deli Grocery, Inc.*, at *4 (finding

75154421;1

there would be a risk of inconsistent results, and wasting the parties' and the courts' resources if the movants were forced to litigate their claims against the debtor and the non-debtor defendants in two courts).

42.     Further, the claims asserted in the Colorado Receivership Action are state law causes of action upon which the Debtor would be jointly and severally liable with its affiliates based on theories of alter ego.  The joint and several liability aspect of the claims would be better resolved through the state court rather than a bankruptcy judge.  *See In re Johnson*, 132 B.R. 403, 406 (E.D. Mo. 1991) (holding that relief from stay may be granted in order to allow the creditor to liquidate and obtain judgment on a debt on which the debtor and a non-debtor are jointly and severally liable).

43.     On the other hand, Movant will be severely prejudiced if the automatic stay is not lifted.  Debtor's purposes for Chapter 11 are purely to obtain another forum and a "re-do" of already-litigated issues in the Colorado District Court.  That is evidenced from the fact that the Rejection Motion is an attempt at re-litigation of the same issues Debtor argued last fall.  Even assuming the Debtor can cobble together a viable Chapter 11 plan with no operations or funding, if Debtor defaults, Movant will then be required to prosecute a later proceeding involving the same facts, witnesses, documents and issues, a gross waste of private and judicial resources. *See In re Mildred Deli Grocery, Inc*., at \*4 (finding there would be a risk of inconsistent results, and wasting the parties' resources if the movants were forced to litigate their claims against the debtor and the non-debtor defendants in two courts).

44.     Policy concerns also mandate modification of the automatic stay in these cases.  In enacting the Bankruptcy Code, Congress noted that while the automatic stay had broad application, "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when

no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many of the duties that may be handled elsewhere." *In re Holdkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 50 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836); *In re Tribune Co.*, 418 B.R. 116, 127-29 (Bankr. D. Del. 2009) (lifting stay to allow litigation to proceed in California court where suit was commenced).  Here, where it would increase efficiency to have the claims against the Debtor heard in the court where those claims originated and which has an eight-year long history of the parties, facts, and issues, and where no prejudice to the bankruptcy estate would result from lifting the automatic stay to allow the litigation to continue in Colorado Receivership Action, public policy dictates that the Court lift the automatic stay.

45.     For all of the foregoing reasons, this Court should lift the automatic stay to allow Movant to continue to prosecute the Colorado Receivership Action, including, but not limited to obtaining a judgment against the Debtor, jointly and severally with the Debtor's affiliates, and liquidating Movant's claim against the Debtor and its affiliates.

46.     As of the filing of this Motion, the Debtor has not consented to the relief requested herein.

**WHEREFORE**,  Movant respectfully requests entry of an Order: *(i)* denying the Rejection Motion (ECF No. 31), *(ii)* lifting the automatic stay as to Movant to allow it to proceed with prosecuting the Colorado Receivership Action against the Debtor, including, but not limited to liquidating Movant's claim against the Debtor and its affiliates; and *(iii)* granting such further and other relief as this Court deems just and equitable.

75154421;1

Dated:  February 26, 2024                    Respectfully submitted,

                                                      By: _/s/ Eyal Berger_____
                                                      Eyal Berger, Esq.
                                                      Florida Bar No: 011069
                                                      eyal.berger@akerman.com
                                                      **AKERMAN LLP**
                                                      201 E. Las Olas Blvd., Suite 1800
                                                      Fort Lauderdale, Florida  33301
                                                      Tel: (954) 463-2700
                                                      Fax: (954) 463-2224
                                                      *Attorneys for Creditor Kelsy Yates*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on February 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case as listed in the below service list.

                                                      /s/ Eyal Berger_____
                                                      Eyal Berger, Esq.

<u>**SERVICE LIST**</u>

**23-20196-MAM Notice will be electronically mailed to:**

Eyal Berger, Esq. on behalf of Creditor Kelsy Yates
eyal.berger@akerman.com, jeanette.martinezgoldberg@akerman.com

Carol Lynn Fox
cfox@brileyfin.com, cclf11@trustesolutions.net

Ross Hoogerhyde on behalf of Interested Party Colorado Department Of Revenue
ross.hoogerhyde@coag.gov

Dana L Kaplan on behalf of Debtor Sterling Consulting Corporation
dana@kelleylawoffice.com,
bankruptcy@kelleylawoffice.com;scott@kelleylawoffice.com;sarah@kelleylawoffice.com;laurie@kelleylawoffice.com

75154421;1

Craig I Kelley on behalf of Debtor Sterling Consulting Corporation
craig@kelleylawoffice.com,
bankruptcy@kelleylawoffice.com;scott@kelleylawoffice.com;kelleycr75945@notify.bestcase.com

Martin P Ochs on behalf of U.S. Trustee Office of the US Trustee
martin.p.ochs@usdoj.gov

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

**23-20196-MAM Notice will not be electronically mailed to:**

75154421;1